IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ISLANDS HOSPICE, INC.,<br><br>              Plaintiff,<br><br>vs.<br><br>MICHAEL DUICK; MĀLAMA OLA HEALTH SERVICES, LLC; JOHN AND/OR JANE DOES 1 – 10; DOE ENTITIES 1 – 5,<br>              Defendants. | Civ. No. 19-00202-JMS-WRP<br><br>ORDER GRANTING DEFENDANT DUICK'S MOTION TO DISMISS, AND DEFENDANT MĀLAMA OLA'S SUBSTANTIVE JOINDER, ECF NOS. 12 & 16 |

## ORDER: GRANTING DEFENDANT DUICK'S MOTION TO DISMISS, AND DEFENDANT MĀLAMA OLA'S SUBSTANTIVE JOINDER, ECF NOS. 12 & 16

### I. INTRODUCTION

On April 19, 2019, Plaintiff Islands Hospice, Inc. ("Islands Hospice") filed its Complaint against Defendants Michael Duick ("Duick"), Mālama Ola Health Services, LLC ("Mālama Ola"), and various Doe Defendants, alleging assorted violations of trade secrets misappropriation under the Defend Trade Secrets Act ("DTSA") and state law, arguing that Defendants had misappropriated its proprietary information. Compl., ECF No. 2.

Currently before the court is Duick's Motion to Dismiss for lack of subject-matter jurisdiction. ECF No. 12. Generally, Duick argues that Islands

Hospice has failed to meet the jurisdictional showing that its "trade secret is related to a product or service used in, or intended for use in, interstate . . . commerce" pursuant to 18 U.S.C. § 1836(b)(1). Mālama Ola filed a Substantive Joinder, joining Duick's arguments in its entirety. ECF No. 16. For the reasons below, the court hereby GRANTS Duick's motion to dismiss, with leave to amend, and GRANTS Mālama Ola's Substantive Joinder.

## II. BACKGROUND

### A. Factual Background

The relevant factual allegations[1] in the Complaint are as follows: Islands Hospice is a non-profit corporation that has provided hospice care to residents of Hawaii for nearly 10 years. Compl. ¶ 2. In 2008, Ministry Research Inc., an Oklahoma non-profit corporation, conducted research into Hawaii's need for hospice care, concluded that there was a need for such care, and invested over $2 million dollars to start Islands Hospice on Oahu. *Id.* ¶¶ 16, 18. The services offered by Islands Hospice include, but are not limited to, "nursing care, grief counseling, spiritual care, in-patient and respite care, dietary counseling, and physical, occupational, and speech therapy." *Id.* ¶ 15. In January 2009, Islands

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Hospice hired Duick as its Associate Medical Director. *Id.* ¶ 20. He later became Islands Hospice's Chief Executive Officer. *Id.*

In or around 2014, the Hawaii Medical Service Association ("HMSA"), an insurance company, initiated a pilot program called Supportive Care, a home-based palliative care service offered to eligible members. *Id.* ¶ 28. In this program, patients participating in the Supportive Care program received "clinical and psycho-social support while still undergoing curative treatment." *Id.* ¶ 29. "The goal of [HMSA's] Supportive Care [program] is to improve the quality of life and clinical outcomes of patients." *Id.* ¶ 30. HMSA's Supportive Care program "required interdisciplinary teams at Medicare-certified hospice agencies." *Id.* ¶ 31. While Supportive Care is not a hospice service, it is "only covered by HMSA if it is provided by a Medicare-certified hospice such as Islands Hospice." *Id.* ¶ 31, n.2.

Islands Hospice participated in HMSA's Supportive Care program, and tasked Duick with overseeing the development of Islands Hospice's Supportive Care program. *Id.* ¶ 32. "Over the multi-year pilot program, Duick oversaw efforts by Islands Hospice's clinical staff to develop and implement" its Supportive Care program. *Id.* ¶ 34. Islands Hospice developed "proprietary business methods, case management systems, processes, procedures, and practices tailored to meet the requirements of HMSA's Supportive Care program." *Id.*

"Islands Hospice also invested significant resources in creating its own unique and proprietary business methods and systems," "tailored to the specific needs of the unique Supportive Care patient population" in Hawaii, "and developed, among other things, case management systems and staffing and response protocols." *Id.* ¶ 35. Islands Hospice continued to fine-tune and develop its Supportive Care program based on feedback from clinical and administrative staff. *Id.* ¶ 36. Through this feedback and fine-tuning process, Islands Hospice (along with Duick) "learned what did and did not work" for Islands Hospice's Supportive Care program. *Id.* ¶ 37. "Because Supportive Care was a new, never-before-offered benefit of HMSA, this knowledge was newly-developed and not available to others." *Id.* And because such information was not known to Islands Hospice's competitors, this information gave Islands Hospice a competitive advantage against its competitors. *Id.* Islands Hospice considers this knowledge its trade secrets. *Id.* ¶ 68. "[A] substantial portion of Islands Hospice revenues [are] derived from . . . its trade secrets." *Id.* Islands Hospice and its employees are also subject to federal regulations. *Id.* In order to "provide the services that benefit from Islands Hospice trade secrets, the company must acquire medical supplies and other goods," most of which are purchased from out-of-state. *Id.*

Aware of the growing opportunities for Supportive Care services in Hawaii, Duick "secretly schemed to create a new hospice care provider" while still

employed by Islands Hospice. *Id.* ¶ 43. The scheme included "weakening Islands Hospice's competitive standing" through various means. *Id.* ¶ 44. Specifically, of relevance to the motion here, Duick created Mālama Ola, a competing Supportive Care service provider. On April 20, 2017, Duick registered Mālama Ola as a Hawaii LLC. *Id.* ¶ 47. And on May 4, 2017, Duick applied for a Certificate of Need, seeking authorization to establish Mālama Ola as a Medicare-certified hospice agency. *Id.* ¶ 51. Duick resigned from his position as CEO of Islands Hospice on May 20, 2017. *Id.* ¶ 54.

**B.     Procedural Background**

On April 19, 2019, Islands Hospice filed its Complaint, alleging a single federal claim of a violation of the DTSA for trade secret misappropriation, along with various state claims of trade secret misappropriation, unfair competition, and deceptive trade practices against Defendants Duick and Mālama Ola. Islands Hospice also appears to allege a state law claim of a breach of fiduciary duty against Duick.[2]

On June 25, 2019, Defendant Duick filed his motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) for lack of subject-matter

---

[2] Islands Hospice's Complaint fails to identify which claims are alleged against which specific Defendant. Based on the facts alleged for each claim, the Court construes the breach of fiduciary duty claim as alleged against Defendant Duick only, while construing all other claims as alleged against both Defendants. If Islands Hospice chooses to file an amended complaint, it should address this omission.

jurisdiction.[3]  ECF No. 12.  Defendant Mālama Ola filed its substantive joinder on June 28, 2019, ECF No. 16, and Islands Hospice filed its Opposition against both Defendants' motions on August 26, 2019.  ECF No. 19.  On August 30, 2019, Duick filed his reply.  ECF No. 20.  The court held a hearing on September 16, 2019.

### III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  The court may determine jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).  The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation marks omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

---

[3]  Plaintiff does not allege any basis for diversity jurisdiction, and alleges the DTSA claim as its sole federal claim.  Duick thus seeks dismissal of that claim here and asks the court to decline supplemental jurisdiction over Plaintiff's state law claims.

# IV. **DISCUSSION**

A. **Islands Hospice Has Not Sufficiently Pled a "Product or Service" in Interstate Commerce Under the DTSA That Relates to its Trade Secret**

The person asserting jurisdiction—the plaintiff—bears the burden of establishing subject-matter jurisdiction. *Shirk v. U.S. ex rel. Dept. of Interior*, 773 F.3d 999, 1006 (9th Cir. 2014) (citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008)). Because subject-matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). If a court concludes that it lacks subject-matter jurisdiction, it must dismiss the complaint in its entirety. *Id.* At the pleadings stage, "[t]he issue of whether there is subject-matter jurisdiction raises the question whether the complaint, on its face, asserts a non-frivolous claim 'arising under' federal law." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 212 n.9 (1974).

   1. *Interpretation of DTSA's Interstate Commerce Requirement*

The DTSA, first enacted in 2016, contains an interstate commerce requirement:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade

secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

18 U.S.C. § 1836(b)(1). This "interstate commerce" requirement is jurisdictional. *United States v. Agrawal*, 726 F.3d 235, 244-45 (2d Cir. 2013).

Here, the trade secret is the "acquired valuable business information about the methods, formulas, techniques, processes, procedures, and programs necessary to successfully implement [Islands Hospice's] Supportive Care program." Compl. ¶ 64; *see also id.* ¶ 68. Defendants argue that Islands Hospice must show that these Supportive Care services themselves are *used in* interstate commerce, and no such facts are pled in the Complaint. Mot. at 4. Islands Hospice, in turn, argues that the trade secret (again, the provision of Supportive Care services) need only *relate* to *a* product or service and in turn that product or service must be used in interstate commerce.[4] *See* Opp'n at 13 ("In other words, the services involving Islands Hospice's trade secrets depend on products used in interstate commerce."). The question is thus how narrow or broad to read the DTSA's jurisdictional requirement.

In ruling on this issue, the court recognizes that it must give meaning to all words in the statute. This court has acknowledged that "the ordinary

---

[4] Islands Hospice has requested judicial notice of three pieces of legislative history of the DTSA pursuant to Fed. R. Evid., 201. Defendants do not oppose. Because "[l]egislative history is properly a subject of judicial notice," *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012), the court grants Plaintiff's request.

meaning of 'related to' is 'broad.'"[5]  Absent the term "related to," the jurisdictional requirement would be both simple and narrow—it would be met only if the trade secret was actually used in, or intended for use in, interstate or foreign commerce. But the term "used in" must also be given meaning—Congress could have said "related to a product or service affecting interstate commerce," which is language commonly known to signal Congress' intent to invoke its full authority under the Commerce Clause.  *See e.g., Jones v. United States*, 529 U.S. 848, 854, 859 (2000) (noting that the term "'affecting . . . commerce,'" "when unqualified, signal[s] Congress' intent to invoke its full authority under the Commerce Clause," whereas the qualifying words "used in" interstate commerce in a criminal statute for arson is a more limiting reading of the "commerce clause" and declining to interpret the statute in a way to "make virtually every arson in the country a federal offense"). The challenge here is to give meaning to the entire statute.

        The court declines to adopt either party's interpretation of the statute. Defendants' narrow reading—that the trade secret itself has to be used in or intended for use in a product or service of interstate commerce—has been explicitly rejected by Congress and would make the "related to" language

---

[5] *See* Order Granting In Part and Denying In Part Defendants' Motion to Dismiss, *WHIC LLC dba Aloha Toxicology v. Nextgen Laboratories, Inc. et. al*, Civ. No. 18-00261 JMS-RLP, ECF No. 102, at PageID# 1671 (D. Haw. Jan. 31, 2019) (quoting *United States v. Agrawal*, 726 F.3d 235, 247 (2d Cir. 2013)).

superfluous.[6]  But Islands Hospice's proffered reading is overly broad, fails to recognize the limiting language in the statute, and would confer federal jurisdiction on essentially all trade secrets.

At the hearing, both parties discussed the Second Circuit decision in *Agrawal* extensively.  *Agrawal* interpreted the nexus requirement of the former statutory language,[7] reconciled *Aleynikov*, and discussed the "related to" clause of the EEA, the criminal analog to the DTSA.[8]  *See Agrawal*, 726 F.3d 235 at 244-45,

---

[6] Congress amended the statutory language in direct response to *United States v. Aleynikov*, 676 F.3d 71 (2nd Cir. 2012).  In *Aleynikov*, the Second Circuit overturned a conviction under the Economic Espionage Act ("EEA"), the criminal analog to the DTSA, expressing doubt as to the reach of the statute.  The Second Circuit found that the interstate commerce requirement was not met, despite the fact that the defendant had crossed state and foreign lines to steal the codes, and despite the fact that the code was used in trading software that conducted national trades every day.  *See Aleynikov*, 676 F.3d at 80, 82 (rejecting the district court's findings that the interstate commerce requirement was met as the program was used to "execute high volumes of trades," and finding no nexus to interstate commerce because the company "had no intention of selling [the program] to anyone" and went to great lengths to maintain the secrecy of its system" and "was not designed to enter or pass in commerce").  Congress modified the language after *Aleynikov* and found that a trade secret need not necessarily be *included in* the product or service that's produced for or placed in interstate or foreign commerce; rather, the trade secretly merely needs to "relate to" such product or service.  Opp'n, Appendix C, ECF No. 19-3 (158 Cong. Rec. S6978-03, S6978) (discussing the statutory amendment as a direct response to *Aleynikov*).

[7] Section 1832 previously stated:  "Whoever, with intent to covert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce. . . ."  Opp'n, Appendix B, ECF No. 19-2; *see also* 1 Trade Secrets Law § 4:5 *Criminal Sanctions—Economic Espionage Act of 1996 as amended in 2012–2013*.

[8] The DTSA was enacted in 2016 as the civil counterpart to the EEA.  The requirement of a jurisdictional nexus to interstate commerce "is identical to the existing language required for Federal jurisdiction over the criminal theft of a trade secret under § 1832(a)."  *Gov't Emp. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 172 (E.D. Pa. 2017) (quoting H.R. Rep. No. 114-529, at 9 (2016).  Thus, analysis of statutory language and legislative history of the EEA is directly applicable to the DTSA.

n.7 ("On this appeal, we have no occasion to construe the revised EEA. Rather, we are obliged to apply the EEA as it existed at the time of Agrawal's conviction and as construed in *Aleynikov*.").

*Agrawal* found that "related to" language in a statute must be read in context, and "where 'related to' is used in legislation creating a discrete exception to a general rule, it may not be construed so expansively as to swallow the general rule." *Id.* at 247-48 (citing *New York Conf. of Blue Cross v. Travlers Ins.*, 514 U.S. 645, 655 (1995)). *Agrawal* further found that "[n]o such concern arises here" as "[t]he EEA's nexus provision creates no exception to an otherwise applicable general rule; rather it signals Congress's intent to exercise its Commerce Clause authority to address the theft of trade secrets." *Id.* at 248. *Agrawal* also agreed with *Aleynikov* that "Congress *did not exercise its full Commerce Clause authority* in the EEA" because there was limiting language, *id.* (emphasis added), but also found that the "related to" nexus provision was "deliberately expansive." *Id.* While *Agrawal* considered the limiting language prior to Congressional amendment, *Agrawal* is still instructive in navigating through the statute and deriving Congressional intent when the statute contains both broadening and narrowing language.

The court need not decide the exact contours of the jurisdictional outer-limits of the DTSA here; however, a few guiding principles can be

extrapolated from the text of the statute. It states that the "trade secret" must "relate to" a "product used, or intended to be used, in interstate commerce." What makes something a trade secret is, in part, information that an owner has taken reasonable measures to keep "secret."[9] Thus, what must "relate to" the product or service in interstate commerce is such "secret" information. Put differently, non-confidential or non-proprietary information, products, or services, in and of themselves, are not trade secrets. It is *how* such information, products, or services are used that can amount to a trade secret. Thus, a plaintiff must plead (i) the existence of a relationship tethering (i.e., "relates to") (ii) the confidential or secret information (i.e., a trade secret) (iii) to a product or service used in, or intended for

---

[9] Specifically, a "trade secret" under the DTSA is generally defined as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

use in, interstate commerce (i.e., "used in . . . interstate commerce") to meet the jurisdictional nexus.

### 2. *Application of the Interstate Commerce Requirement*

With these principles in mind, the court next addresses Islands Hospice's arguments and specific allegations. Islands Hospice proffers three theories, arguing that it has sufficiently pled the nexus to interstate commerce. All three theories fail.

First, Islands Hospice alleges the underlying medical products used to provide its Supportive Care program are from out-of-state. Opp'n at 13; Compl. ¶ 68. But Islands Hospice has failed to sufficiently plead facts identifying the relationship between the medical supplies and how they are used in the Supportive Care program implicating its trade secrets. Islands Hospice claims that such medical supplies are used in its program, but it has not identified how they are used and in what way that connects the shipment of medical supplies to its trade secret. Put differently, what part of the shipping of out-of-state medical supplies is tethered to its secret information? Merely pleading that its Supportive Care program relies on out-of-state products is insufficient.

If accepted, this argument would result in a virtually unlimited expansion of the court's jurisdiction. If merely shipping the non-confidential components of a trade secret across state lines meets the jurisdictional nexus,

13

virtually every trade secret would be subject to federal jurisdiction because supplies are shipped interstate in almost any business. Given the limiting language used by Congress, the court declines to adopt such an expansive interpretation.

Second, Islands Hospice argues that its "methods, formulas, processes, and procedures for procuring those interstate products are part of its trade secrets." Opp'n at 13. While this could possibly state a cognizable claim depending on whether the facts pled establish the nexus between the product and how it is used as to the purported trade secrets, this theory fails here because Islands Hospice actually pled a *different* theory—that its trade secret was the "valuable business information about the methods, formulas, techniques, processes, procedures, and programs necessary to successfully implement a Supportive Care program." Compl. ¶ 64.

Third, Islands Hospice argues that the jurisdictional nexus is met because "a substantial portion of the services dependent on the trade secrets are paid by Medicare and Islands Hospice and its employees are subject to heavy federal regulation." Opp'n. at 13; Compl. ¶ 68. The exact relationship, however, between Islands Hospice's trade secret and Medicare funding or federal regulation is unclear from Plaintiff's Opposition or the Complaint. Islands Hospice's argument appears to be that because Islands Hospice is a facility that relies on Medicare and is subject to federal regulation, and because its business relies, in

part, on the revenue generated from the Supportive Care program, then the interstate commerce requirement has been met.

But Islands Hospice has not pled any facts explaining how the Supportive Care program bears any relation to a *specific* service or product at Islands Hospice that relies on Medicare or is subject to federal regulation.  Merely because the facility, itself, receives Medicare funding or is subject to federal regulation is not enough.  *See DLMC, Inc. v. Flores*, 2019 WL 309754, at *2 (D. Haw. Jan. 23, 2019) (rejecting plaintiff's allegation that the interstate commerce requirement is met even though plaintiff is an entity "whose very existence relies on and is conditioned upon federal application, certification and approval[, and whose] services . . . are subject to federal law relating to receipt of federal funds," because "[t]hese allegations beg the question of whether and how the trade secrets defendants are alleged to have misappropriated are somehow related to the provision of interstate services offered by [plaintiff]").  Likewise, Islands Hospice has failed to allege facts establishing the relationship between the Supportive Care program and its purported services which rely on Medicare funding.

Thus, Islands Hospice has failed to allege sufficient facts to show a "trade secret" that sufficiently "relates to a product or service used in, or intended for use in, interstate commerce."  The court GRANTS Duick's motion to dismiss as to the DTSA claim, with leave to amend.

**B.      Islands Hospice's State Law Claims**

If Islands Hospice does not file an amended complaint, the court will decline jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(c) and dismiss them without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). But if Islands Hospice files an amended complaint that states a cognizable federal claim against Defendants, the court will retain jurisdiction over related state-law claims included in the amended complaint and address them at that time.

//

//

//

//

## V. CONCLUSION

For the foregoing reasons, the court GRANTS Defendant Duick's motion to dismiss, with leave to amend, and GRANTS Defendant Mālama Ola's substantive joinder. If Islands Hospice can do so, it may file an amended complaint by October 25, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 23, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Islands Hospice, LLC v. Duick, et al.*, Civ. No. 19-00202 JMS-WRP, Order Granting Defendant Duick's Motion to Dismiss and Defendant Mālama Ola's Substantive Joinder, ECF Nos. 12 & 16.